Doris B. HARTE and Stanley J. Harte,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

United States District Court
S. D. New York.

June 25, 1957.

Harte & Natanson, New York City, George Natanson, New York City, of counsel, for plaintiffs.

Paul W. Williams, U. S. Atty., Amos J. Peaslee, Jr., Asst. U. S. Atty., New York City, of counsel, for the United States.

LEVET, District Judge.

Both plaintiffs and defendant have moved for summary judgment. The action is brought to recover alleged overpayments of income taxes which plaintiffs contend were erroneously and illegally assessed and collected for the calendar years 1946 to 1951 inclusive. The issues involve the receipt of money by plaintiff Doris B. Harte. Income tax returns were made on payments received by Doris B. Harte for the years in question, separate returns having been made by her for the years 1946 and 1947 and joint returns having been filed for the years 1948, 1949, 1950 and 1951. The facts, many of which have been stipulated, are as follows:

1. Samuel M. Braunstein, a resident of Atlantic City, New Jersey, died on November 14, 1928, leaving an estate then valued at $3,000,000.

2. Decedent's only living descendant was his grandchild Doris Adele Braunstein, now the plaintiff Doris B. Harte. At the time of decedent's death, Doris B. Harte was about 13 years of age. She and decedent's wife were his only surviving heirs and next of kin.

3. Had Samuel M. Braunstein died intestate, Doris B. Harte would have inherited all of his real property, subject to his widow's dower rights therein, and she would also have inherited two-thirds of his personal property.

4. Under the will of the said decedent, plaintiff, Doris B. Harte, was the beneficiary only to the extent of a trust fund of $5,000, from which she was to receive income until the age of 40, when she was to acquire one-half of the fund, and thereafter she was to receive income until the age of 50, when the balance of the fund was to be paid to her.

5. Objections to the will were filed by Doris B. Harte through her mother, Rose Richman, acting as her guardian. The New Jersey Orphans Court ruled that Doris B. Harte had reasonable cause to contest the probate and the order of that court was eventually affirmed by the highest court of the State of New Jersey.

6. Thereafter, Doris B. Harte's objections to the probate of the will were settled by an agreement dated November 26, 1934, between Doris B. Harte, acting through her mother, Rose Richman, the Guarantee Trust Company as an executor and sole trustee under the will, and those persons who took the entire income and corpus of a trust created under Paragraph Seventh of Samuel M. Braunstein's will, as well as almost all of the residuary estate.

7. The settlement agreement provided, among other things, that the "390 shares of the capital stock of the Boardwalk Realty Co. * * * and the dividends received thereon to October 1, 1934, shall be held by the Executors or the Trustee for the benefit of the Contestant [Doris B. Harte] * * *."

8. It is further specified in the agreement that in such event, at the sole discretion of the benficiaries, the said 390 shares of stock of the Boardwalk Realty Company shall revert back to the beneficiaries free of the obligation of the contestant (Doris B. Harte) and be dealt with in accordance with the direction of Paragraph Seventh of the will (the trust provision).

9. The dividends mentioned above, amounting to $92,690, had been com-

mingled with miscellaneous receipts of the estate. By the settlement agreement it was understood that they were to be repaid to the trust fund described in Paragraph Seventh of the will of Samuel M. Braunstein. The aforementioned sum was subsequently paid into the trust fund—$60,000 in cash and $32,690 in securities. The cash was subsequently invested. At the present time the trust fund, exclusive of the shares of Boardwalk Realty Company, has a value of $83,971.09.

10. The settlement agreement also provided for monthly payments of $208.-33 to Doris B. Harte for the period of her natural life. Since the making of the settlement agreement, these monthly payments have in fact been made to her.

11. Doris B. Harte filed individual income tax returns for the years 1946 and 1947 with the Collector of Internal Revenue for the First District, Brooklyn, New York. The plaintiffs Doris B. Harte and her husband, Stanley J. Harte, filed joint income tax returns with the same Collector for the year 1948, and for the years 1949, 1950 and 1951 with the Collector of Internal Revenue for the Third District, New York, N.Y.

12. The income tax returns referred to above were thereafter audited by the said Collectors who asserted deficiencies against plaintiff Doris B. Harte as follows:

| Year | Tax | Interest | Total |
|------|-----|----------|-------|
| 1946 | $1,541.71 | $587.88 | $2,129.59 |
| 1947 | 287.71 | 92.44 | 380.15 |
|  | $1,829.42 | $680.32 | $2,509.74 |

And against both the plaintiffs as follows:

| Year | Tax | Interest | Total |
|------|-----|----------|-------|
| 1948 | $ 810.54 | $ 211.81 | $1,022.35 |
| 1949 | 748.00 | 158.18 | 906.18 |
| 1950 | 850.00 | 128.75 | 978.75 |
| 1951 | 1,275.00 | 116.66 | 1,391.66 |
| Total | $3,683.54 | $615.40 | $4,298.94 |
| Grand Totals | $5,512.96 | $1,295.72 | $6,808.68 |

13. Following payment of the taxes aforementioned, plaintiffs filed timely claims for refund of said taxes and interest paid thereon. Each of the claims for refund has been disallowed and two years have not elapsed since the disallowance of any of the refund claims.

14. The agreement provides that the executors and/or trustee and the beneficiaries shall have and do have the right to sell said stock as in the will authorized, provided that the executors and/or trustee retain in their or its possession a sum in cash, which, if invested in United States Government securities, will provide an income, after the trustee's fees and expenses have been paid, of $2,500 per annum, sufficient to pay the *annuity payable monthly* as hereinabove stipulated and have the right to invest said sum in bonds of the United States Government.

The taxpayer, Doris B. Harte, has taken the position that the payments received in the years 1946 to 1951 are properly construed as received by way of an inheritance and so are not includable in gross income. The government argues that these payments are includable in gross income under the express provisions of the 1942 amendment to Section 22(b) (3) of the Internal Revenue Code

of 1939, which section, as amended, 26 U.S.C.A. § 22(b) (3), provides in part as follows:

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \*

"(3) Gifts, bequests, devises, and inheritances.—The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. For the purposes of this paragraph, if under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income from property, it shall be considered a gift, bequest, devise, or inheritance of income from property."

Section 22(b) (3) of the Internal Revenue Code of 1932, 26 U.S.C.A. Int.Rev. Acts, page 487 provided as follows:

"(b) Exclusions from Gross Income. The following items shall not be included in gross income and shall be exempt from taxation under this title:

\* \* \* \* \* \*

"(3) Gifts, bequests, and devises. The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income)."

■ Under Section 22(b) (3) as amended in 1942, it is specifically specified that "[T]here shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income." It appears, therefore, that the income receivable by Doris B. Harte constitutes taxable in-

come under the 1942 amendment of the Code. Although the fund may be construed to have been received by way of inheritance (see Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119), the payments set up pursuant to the agreement settling the will contest were paid out of income. The statute as applied by the courts makes inheritances payable at intervals taxable to the extent paid out of income. See Townsend v. Commissioner of Internal Revenue, 1949, 12 T.C. 692, affirmed 6 Cir., 1950, 181 F.2d 502; Lindau v. Commissioner of Internal Revenue, 1954, 21 T.C. 911; Copeland v. Commissioner of Internal Revenue, 1949, 12 T.C. 1020.

The taxpayer contends that as the law existed in 1934, at the time of the execution of the agreement, the payments would not have been taxable and, secondly, that the change in the law affected by the 1942 amendment cannot be constitutionally applied to make these payments taxable. Actually, Section 22(b) (3) of the 1932 Code (as effective in 1934) made income from property acquired by gift, bequest, devise or inheritance taxable. Prior to 1942 and under provisions similar to those of the 1932 Code, the Supreme Court of the United States determined that payments made periodically by the terms of an inheritance were taxable if they were payable out of income only. See Irwin v. Gavit, 1925, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897. On the other hand, periodic payments which were to be made regardless of income, that is, out of the corpus or out of the income, were held not to be taxable even though made from income. Burnet v. Whitehouse, 1931, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916; Chase National Bank of City of New York v. Commissioner of Internal Revenue, 1939, 40 B.T.A. 44.

It appears that the 1942 amendment of Section 22(b) (3) was intended by Congress to make periodic payments, even though payable in any event, taxable to the extent actually paid out of income. H.R.Rept. No. 2333, 77th Cong., 1st Sess. 66 (1942) (1942–2 Cum.Bull. pp. 424,

425).[1] See also Coleman v. Commissioner of Internal Revenue, 3 Cir., 1945, 151 F. 2d 235; Lindau v. Commissioner of Internal Revenue, 1954, 21 T.C. 911.

The periodic payments made to Doris B. Harte were not, in fact, only paid out of income, but, according to the terms of the settlement agreement, could only be made from income. The agreement itself authorizes the executors and trustee to hold the stock and the dividends received thereon for the benefit of Doris B. Harte, and to use the dividends to make the monthly payments. See Paragraph 1 of the Agreement.

Paragraph 2 of the agreement authorizes the executors and/or trustee "to set aside so much of the dividends received after October 1, 1934 for the benefit of the Contestant as may be necessary to make the payment of said sums to and for Contestant." Furthermore, the sale or reversion of the stock is authorized only if the funds remaining in the hands of the executors or trustee which, if invested in United States Government securities, would produce sufficient income to meet the contestant's "annuity." Other paragraphs of the agreement indicate that the contestant is entitled to payment out of income only.

The plaintiffs as taxpayers have no vested right either in any decision or in any statute. See Corrigan v. Commissioner of Internal Revenue, 6 Cir., 1946, 155 F.2d 164. See also Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; National Bank of Commerce of Seattle v. Commissioner of Internal Revenue, 1949, 12 T.C. 717. Attacks on the retroactive effect of statutes have been rejected. Welch v. Henry, 1935, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87; Brushhaber v. Union Pacific Railroad Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493. See also Wilgard Realty Co. v. Commissioner of

Internal Revenue, 2 Cir., 1942, 127 F.2d 514, certiorari denied 317 U.S. 655, 63 S.Ct. 52, 87 L.Ed. 527 (retroactive application of statute effecting change in basis of property for purposes of gain or loss on sale thereof); Thorp's Estate v. Commissioner of Internal Revenue, 3 Cir., 1947, 164 F.2d 966, certiorari denied 333 U.S. 843, 68 S.Ct. 660, 92 L.Ed. 1126 (retroactive taxation of reserved power to alter, amend or revoke trust).

Consequently, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.

So ordered.

---

1. In the conference report on the bill amending Section 22(b) (3) it was stated: "Amendment No. 32: This is a technical amendment of the last sentence of section 22(b) (3) which the House bill added in order to prevent the exclusion from income of gifts and bequests paid at intervals out of income. The House recedes." H.Rept. No. 2586, 77th Cong., 2nd Sess. 2 (1942) (1942-2 Cum.Bull. p. 702).